# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

Nº 12-CV-1561 (JFB) (ARL)
_____

BARRY S. KORMAN,

Plaintiff,

VERSUS

CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., D/B/A CON EDISON, CONSOLIDATED EDISON EMPLOYEE BENEFITS PLAN, UNITEDHEALTHCARE SERVICE, LLC, AND CIGNA CORPORATION D/B/A CONNECTICUT GENERAL LIFE INSURANCE COMPANY AND CIGNA,

Defendants.

_____

**MEMORANDUM AND ORDER**
January 16, 2013
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Barry S. Korman ("plaintiff" or "Korman") seeks relief pursuant to the Employee Retirement Security Act of 1974 ("ERISA") and under common law against UnitedHealthCare Service LLC ("defendant" or "United").[1] Specifically, Korman seeks damages arising from United's alleged misrepresentation as to the Lifetime Maximum Medical Benefits available to Korman under his employer's benefits plans after he had retired from his job.[2] United filed a motion to dismiss Korman's amended complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds that ERISA preempts Korman's negligent misrepresentation claim.[3] For the

---

[1] The majority of Korman's claims are brought against his employer, defendant Consolidated Edison Company ("Con Edison"). The Court does not address these claims here, as the pending motion only concerns the claims against United.

[2] Although in his complaint Korman brings both a claim of negligent misrepresentation and a claim of declaratory judgment against United, (*see* Am. Compl. ¶¶ 99-112), in Korman's opposition to United's motion to dismiss, he stated that he was no longer pursuing the latter claim against United, (*see* Korman Opp'n Mot. to United's Mot. to Dismiss (Korman Opp'n Mot.) at 2.) Thus, the Court limits its analysis to Korman's claim of negligent misrepresentation against United.

[3] United initially moved to dismiss Korman's declaratory judgment claim. As noted above, because

1

reasons set forth herein, the Court concludes that Korman's negligent misrepresentation claim is preempted by ERISA and, because no claim lies against former claims administrator United under ERISA (as conceded by plaintiff), United's motion to dismiss is granted.

I. BACKGROUND

A. Factual History

The following facts are taken from the amended complaint and are not findings of fact by the Court. Instead, the Court assumes these facts to be true for purposes of deciding the pending motion to dismiss and will construe them in a light most favorable to plaintiff, the non-moving party.

1. The Employee Plan

Korman was an employee of Consolidated Edison Company ("Con Edison") for thirty-nine years; he first joined the company in 1970. (Am. Compl. ¶¶ 11, 20.) Throughout his employment, Korman participated in an open enrollment plan ("Employee Plan"). (*Id.* ¶ 12.) In March 2000, Korman received a letter that notified him of benefit updates to his Employee Plan, specifically, that the plan's Lifetime Maximum Medical Benefit had increased from one million to two million dollars. (*Id.* ¶¶ 13-14.)[4] Korman understood this language to mean that he was entitled to the referenced two million dollar benefit for his lifetime. (*Id.* ¶ 11-16.)

Con Edison self-insures two different employee welfare benefit plans. One is for active employees (the aforementioned Employee Plan), and the other, for retirees ("Retiree Plan") (collectively, the "Plans"). (*Id.* ¶¶ 4-5.) United was the claims administrator of each Plan up to and including December 31, 2009, when all claims administration was conducted by Cigna Corporation ("Cigna"). (*Id.* ¶ 33.)

2. The Diagnosis

In April 2009, while still an employee at Con Edison, Korman received a different notification: he learned that he had a rare form of cancer. (*Id.* ¶ 17.) Korman informed Con Edison of his health status and began undergoing treatments at North Shore University Hospital. (*Id.* ¶¶ 17-19.)

On approximately April 13, 2009, David Schaffer ("Schaffer"), Con Edison's retiree benefits representative, visited Korman in the hospital. (*Id.* ¶ 21.) During the visit, Schaffer encouraged Korman to retire; he claimed that retirement would be in Korman's wife's best interest because it would improve her pension-payment position. (*Id.* ¶ 23.) Specifically, Schaffer informed Korman that if he should die before retiring, his wife would only receive 50% of Korman's pension; if Korman retired, took a lower pension, and then died, however, his wife would receive 100% of the lower pension. (*Id.* ¶¶ 21-23.) Korman

---

Korman subsequently stated in his opposition motion that he was no longer pursuing such a claim, the Court need not and does not address United's arguments as to this point.

[4] The particular language of interest was contained in a document entitled, "Summary of Material Modifications" ("SMM"). The identified modification stated: "Under Hospital/Medical Option A, each covered person's lifetime maximum medical benefit increases from $1,000,000 to $2,000,000. There is no lifetime limit on most hospital benefits.

Under Hospital/Medical Option B, C and D, each covered person's lifetime maximum medical and hospital benefit increases from $1,000,000 to $2,000,000." (Am. Compl. ¶ 13.)

claims he received no documentation from Schaffer during this visit. (*Id.* ¶ 24.)

Several nights later, Schaffer called Mrs. Korman. (*Id.* ¶ 25.) He informed her that he had papers for her husband to sign, and that he wanted to go to the hospital so that Korman could review them. (*Id.*) The following morning, Schaffer picked Mrs. Korman up and they drove together to the hospital. (*Id.* ¶ 27.) Once there, Schaffer handed Korman documents, which addressed the company's retirement process and its corresponding change to his pension benefit status. (*Id.* ¶¶ 25, 27.) Schaffer instructed Korman to sign the paperwork. (*Id.* ¶ 27.) Korman asked if he and his wife could have time to review the paperwork. Essentially refusing Korman's request, Schaffer said he was in a rush to leave and needed the documents signed then and there. (*Id.*) Korman did so and, as of May 1, 2009, was an official retiree of Con Edison. (*Id.* ¶¶ 25-27, 30.)

3. Back Problems with No Back-Up

On approximately August 27, 2009 (post-retirement), Korman received an explanation of benefit form ("EOB") from United. (Am. Compl. Ex. D.) Dated August 19, 2009, the EOB had been issued in response to a claim for benefits for a medical procedure that Korman had undergone on April 9, 2009 (pre-retirement). The EOB stated that Korman had a "Lifetime Plan Maximum" of two million dollars, and a "Lifetime Maximum Remaining" of $1,526,405.50. (Am. Compl. ¶ 31.)

In 2010, there was a change in claim administration, *i.e.*, Cigna replaced United as claims administrator for Con Edison's benefits. (*Id.* ¶ 33.) In December 2010, Korman, understanding United's EOB to mean that he still carried a Lifetime Maximum Medical Benefit of two million dollars, had elective back surgery. (*Id.* ¶¶ 32, 34.) Approximately one year later, on October 15, 2011, Korman received an EOB from Cigna. (*Id.* ¶ 35.) The letter stated that Korman had exceeded his medical insurance limit of one million dollars. (*Id.* ¶¶ 31-32, 34-35.)

B. Procedural History

Korman filed the initial complaint in this action on March 30, 2012; he filed an amended complaint on June 20, 2012. On August 1, 2012, United moved to dismiss Korman's amended complaint. Korman filed an opposition to the motion to dismiss on September 7, 2012. On September 21, 2012, United submitted its reply. Oral argument was conducted on November 26, 2012. Plaintiff filed a supplemental letter on December 10, 2012. The Court has fully considered the parties' arguments and submissions.

II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but

3

only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662 (2009). The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*.

The Court notes that in adjudicating this motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and reversed in part on other grounds sub nom., Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005). In the instant case, because the Plan documents are either attached to the amended complaint or incorporated by reference in the complaint – such as the Explanation of Benefit form from United, the summary plan description ("SPD") for the Employee Plan, and the SPD for the Retiree Plan –, the Court may consider those documents on the motion to dismiss.

III. DISCUSSION

United contends that Korman's state law negligent misrepresentation claim is preempted by ERISA, 29 U.S.C. § 1001 *et seq.*, because it is, in effect, a claim for benefits. Additionally, United argues that Korman cannot state an ERISA claim against United. For the following reasons, the Court agrees with United.

A. ERISA Preemption

1. Legal Standard

ERISA was enacted to "'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting 29 U.S.C. § 1001(b)) (alteration in original). Its main objective "is to provide a uniform regulatory regime over employee benefit plans." *Id.*; *see also N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656-57 (1995) ("Congress intended 'to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government . . . , [and to prevent] the potential for conflict in substantive law . . . requiring the tailoring of plans and employer conduct to

4

the peculiarities of the law of each jurisdiction.'" (alterations in original) (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990))).

To provide such uniformity, the statute contains broad preemption provisions, specifically, section 514, 29 U.S.C. § 1144, which safeguards the exclusive federal domain of employee benefit plan regulation. *See Davila*, 542 U.S. at 208; *see also Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981). Section 514 of ERISA states that, unless so limited, ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a).

Section 502(a)(1)(B) serves as ERISA's main enforcement tool in ensuring a uniform federal scheme. Section 502(a)(1)(B) of ERISA provides:

> A civil action may be brought – (1) by a participant or beneficiary - . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B).

The Supreme Court has explained that "the detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). The Supreme Court has noted that "the inclusion of certain remedies and the exclusion of others under [§ 502's] federal scheme . . . 'provide[s] strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'" *Id.* (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985)). It likewise has acknowledged that "the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Id.* For this reason, where a plaintiff brings a state law claim that is in reality an ERISA-claim cloaked in state-law language, ERISA's preemption power will take effect. *See Davila*, 542 U.S. at 207 ("When a federal statute wholly displaces the state-law cause of action through complete pre-emption, the state claim can be removed" to federal court (quoting *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003) (alterations and internal quotation marks omitted)); *id.* at 207-08 ("[W]hen the federal statute completely pre-empts the state-law cause of action, . . . even if pleaded in terms of state law, [it] is in reality based on federal law."); *id.* at 208 (describing ERISA as "one of these statutes" that holds complete preemption power).[5]

---

[5] At oral argument, United argued that Korman's claims were preempted under both the complete preemption doctrine and the express preemption doctrine. (Oral Arg. Nov. 26, 2012.) Complete preemption applies where Congress has so "completely pre-empt[ed] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Bloomfield v. MacShane*, 522 F. Supp. 2d 616, 620 (S.D.N.Y. 2007) (quoting *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 63-64 (1987)) (internal quotation marks omitted). In contrast, express preemption applies where a federal law "contains an express preemption clause," requiring the court to "'focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent.'" *Chamber of Commerce of U.S. v. Whiting*, 131 S. Ct. 1968, 1977 (2011) (quoting *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993)). Because Korman's negligent misrepresentation claim is completely preempted pursuant to ERISA's

The effect of this preemptive power cannot be understated: it "prevents plaintiffs from 'avoid[ing] removal' to federal court 'by declining to plead necessary federal questions.'" *Arditi v. Lighthouse Int'l*, 676 F.3d 294, 298-99 (2d Cir. 2012) (quoting *Romano v. Kazacos*, 609 F.3d 512, 519 (2d Cir. 2010)) (alteration in original).

The relevant test for assessing whether a claim is preempted under ERISA consists of two parts:

> claims are completely preempted by ERISA if they are (i) brought by "an individual [who] at some point in time, could have brought his claim under ERISA § 502(1)(B)," and (ii) under circumstances in which "there is no other independent legal duty that is implicated by a defendant's actions."

*Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 328 (2d Cir. 2011) (quoting *Davila*, 542 U.S. at 210). Additionally, "[t]o avoid potential confusion under the first prong of *Davila*, [the Second Circuit] has further clarified that the plaintiff must show that: (a) he is the type of party who can bring a claim pursuant to § 502(a)(1)(B) of ERISA; and (b) the actual claim asserted can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B)." *Arditi*, 676 F.3d at 299. Where both of *Davila*'s factors are satisfied – including the two sub-parts to *Davila*'s first prong – ERISA will preempt the state law claim. *Id.* (citing cases).

### 2. Application

#### a. *Davila* Prong One

The Court first assesses whether Korman "is the *type* of party that can bring a claim" under § 502(a)(1)(B); it then considers "whether the *actual claim*" at issue constitutes a colorable claim for benefits under § 502(a)(1)(B). *Montefiore*, 642 F.3d at 328; *see also Josephson v. United Healthcare Corp.*, No. 11-CV-3665(JS)(ETB), 2012 WL 4511365, at *3 (E.D.N.Y. Sept. 28, 2012) (acknowledging the Second Circuit's interpretation of *Davila*'s two-pronged test as consisting of two inquiries under the first prong).

#### i. Type of Party

As previously set forth, section 502(a)(1)(B) makes clear that a civil action may be brought (1) "by a participant or beneficiary" of (2) an ERISA employee benefit plan. 29 U.S.C. § 1132(A)(1)(B). The Court addresses each of these elements.

First, Con Edison's self-insured plans, namely, the Employee Plan and Retiree Plan, each constitute an employee welfare benefit plan within the meaning of Section 3(1) of ERISA, 29 U.S.C. § 1002(1).[6] Second, Korman was a "participant or beneficiary" of the Employee Plan until his retirement; he then became a "participant or beneficiary" of the Retiree Plan. (Am. Compl. ¶¶ 1, 12, 30.) Thus, Korman meets

---

expansive scope regarding employment welfare benefit plans, *see Metro. Life*, 481 U.S. at 63-64, the Court need not also address the express preemption issue.

[6] The Fund's plans fall within the meaning of an employee welfare benefit plan as defined under Section 3(1) of ERISA, 29 U.S.C. § 1002(1) (defining "employee welfare plan" as "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries . . . benefits").

at least the initial standing requisites to bring a civil action under § 502(a)(1)(B). *See* 29 U.S.C. § 1132(a)(1)(B); *see also Arditi*, 676 F.3d at 299 (concluding that plaintiff "is the type of party who can bring an ERISA claim because he is a Plan participant and he is seeking benefits under the Plan").

ii. Colorable Claim

The true source of contention here under *Davila*'s prong one is whether Korman's claim for negligent misrepresentation constitutes a "colorable claim" under ERISA, *i.e.*, a claim "to recover benefits due," "to enforce his rights under," or "to clarify his rights to future benefits" under the terms of the employee welfare benefit plan. 29 U.S.C. § 1132(a)(1)(B).

United asserts that Korman's claim is "colorable" because plaintiff, in effect, seeks a reinstatement of benefits under the terms of Con Edison's Plans. (United's Mem. of L. in Supp. of Mot. to Dismiss at 6; United's Reply Br. at 2, 4-5.) Korman counters that he seeks compensatory damages for negligent misrepresentation, not benefits; ergo, his claims are not preempted by ERISA. (Korman's Mem. of Law in Opp'n to Mot. to Dismiss (Korman Opp'n Mot.) at 5.) On careful consideration of the parties' positions, the Court agrees with United that Korman's claim is a "colorable" one under ERISA.

To begin with, Korman expressly states in his complaint that he seeks a reinstatement of benefits as allegedly guaranteed to him under Con Edison's Plans. (*See* Am. Compl. ¶ 1 (stating "[Korman] seeks relief pursuant to the Employee Retirement Security Act of 1974, as amended ("ERISA") and common law. *In particular, [Korman] seeks reinstatement by the Plan of his Lifetime Maximum Medical Benefit*" (emphasis added)); *see also id.* Count I, ¶¶ 39-45 (asserting a claim under 29 U.S.C. § 1132(a)(1)(B); noting that Con Edison's Plans "are both ERISA welfare plans"; stating that "[Korman] has standing to pursue benefits and other remedies because he was a participant under the Plans"; and alleging against Con Edison that it is liable to Korman for "*full medical benefits* per the Lifetime Maximum Medical Benefit of $2,000,000 pursuant to 29 U.S.C. § 1132(a)(1)(B)" (emphasis added)); *id.* Count X, ¶¶ 109-112 (stating "[a]n actual controversy exists as to *whether [Korman] is entitled to be reinstated to a Lifetime Maximum Benefit for medical coverage* at the level of $2,000,000 rather than $1,000,000"; requesting declaratory judgment "reinstating [Korman] to a Lifetime Maximum Benefit for medical coverage of, $2,000,000 under the Plan . . . ." (emphasis added)).)

Second, Korman's contention that his Count IX negligent misrepresentation claim simply seeks compensatory damages, thereby removing it from a benefit-claim categorization, is unpersuasive.[7] Specifically, the Second Circuit has noted a distinction between claims concerning a "*right* to payment" versus claims involving an "*amount* of payment." *See Montefiore*, 642 F.3d at 331 (emphasis added). Whereas

---

[7] Korman also argues that his Count IX claim cannot be construed as a benefit-determination claim because "United was no longer the claims administrator by the time Mr. Korman's health insurance coverage was terminated in October 2011." (Korman Opp'n Mot. at 6.). The Court does not find this argument convincing. The crux of Korman's negligent misrepresentation claim against United is the latter's alleged misstatement to Korman in its August 2009 EOB, which described Korman's supposed coverage and benefits at that time. At the time United sent the EOB (August 2009), it was still the claims administrator for Con Edison; it was not until 2010 that Cigna replaced United, a fact that Korman does not dispute. (Am. Compl. ¶ 33.) Thus, the Court finds no merit to this point.

7

the former class of claims "implicate[s] coverage and benefits established by the terms of the ERISA benefit plan," which may be brought under § 502(a)(1)(B), the latter are "typically construed as independent contractual obligations between the provider and . . . the benefit plan." *Id*. Although at first blush Korman's claim seems like a dispute over a dollar amount (here, the specific quantity of medical benefits available to him under the Plans), careful examination suggests that it is, in fact, a dispute concerning his right to payment for medical expenses under Con Edison's Plans.

Korman's claim centers on United's alleged misstatement that, in August 2009, Korman had a Lifetime Medical Maximum Benefit of two million dollars. (Am. Compl. ¶¶ 100-07.) Korman argues that, contrary to United's statement in the EOB, United should have informed Korman that his actual Lifetime Maximum Medical Benefit, at that time and going forward, was actually one million dollars. (*Id.* ¶¶ 100-107.) Breaking Korman's allegations down to their most basic form, the amended complaint asserts that at the time United made the alleged misrepresentation to Korman, it was acting in its capacity as a claims administrator for the Plans. (*See* Am. Compl. ¶¶ 31-33; Decl. of Gretchen Hess ("Hess Decl.") ¶¶ 3-4.) The substance of United's communication to Korman – made via a Plan-issued EOB – implicates coverage and benefits determinations under the terms of Con Edison's Plans. Thus, the matter goes beyond a simple dispute concerning a quantity of payment; instead, it triggers issues regarding both coverage availability and benefit eligibility under the ERISA-governed Plans. In particular, it concerns the effect of Korman's May 2009 retirement upon his entitlement to medical benefits under the Plans. *See Neuroaxis Neurosurgical Assocs., PC v. Cigna Healthcare of N.Y., Inc.*, No. 11 Civ. 8517 BSJ AJP, 2012 WL 4840807, at *3-4 (S.D.N.Y. Oct. 4, 2012) (noting that only "right to payment" claims "are considered actual claims for benefits and can be preempted"; further clarifying that "'[r]ight to payment' claims involve challenges to benefits determinations, depend on the interpretation of plan language, and often become an issue when benefits have been denied," whereas "'[a]mount of payment' claims involve the calculation and execution of reimbursement payments, depend on the extrinsic sources used for the calculation, and are commonly tied to the rate schedules and arrangements included in provider agreements"); *Josephson*, 2012 WL 4511365, at *3 (noting distinction between claims for plan benefits that turn on a "right to payment" as opposed to an "amount of payment," and concluding that because some of the reimbursement claims at issue "were denied for reasons that would implicate coverage determinations under the terms of the United benefit plans," federal subject matter jurisdiction applied).

Although the Court need not (and does not) do so at this stage in the litigation, even if it were to consider the merits of Korman's claim, such an analysis would require the Court to review the terms of the ERISA-governed Plans, particularly those provisions concerning medical benefits for employees versus medical benefits to retirees.[8] This weighs in favor of a finding that Korman has brought a "colorable claim"

---

[8] For instance, the challenged EOB sent in August 2009 concerned Korman's April 2009, pre-retirement claim for medical expenses. As of May 2009, however, Korman was a retiree of Con Edison, and thus, was subject to different benefits upon the start of his retirement. Whether and how his May 2009 retiree status affected a claim dating back to his pre-retirement days and an EOB issued during his post-retirement days would require this Court to examine Con Edison's different ERISA-governed Plans.

under § 502(a)(1)(B). *See Montefiore*, 642 F.3d at 331 (describing "right to payment" as "claims that implicate coverage and benefits established by the terms of the ERISA benefit plan" and "amount of payment" as "claims regarding the computation of contract payments or the correct execution of such payments"); *Olchovy v. Michelin N. Am., Inc.*, No. CV 11-1733(ADS)(ETB), 2011 WL 4916891, at *4 (E.D.N.Y. Sept. 30, 2011) (Report and Recommendation) (stating *Montefiore* "teaches that a dispute is a colorable claim for benefits under ERISA when its resolution depends on an interpretation of the terms of an ERISA-governed employee benefit plan; that is, when, in order to determine whether the plaintiff is entitled to relief, the court must look to the terms of employee benefit plan, itself").

The allegations in this case stand in contrast to those cases in which a court has held that the plaintiff's claim was better categorized as an "amount of payment" dispute, and not a "right to payment" matter. *See, e.g., Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 943-44 (9th Cir. 2009) (holding that action against an ERISA plan administrator based on his alleged oral promise to pay for the majority of beneficiary's medical expenses was not a "colorable claim" under § 502(a)(1)(B) because dispute concerned the terms of the alleged oral promise, not of the ERISA plan itself); *Olchovy*, 2011 WL 4916891, at *5 (where plaintiffs alleged they were entitled to family medical coverage pursuant to a settlement agreement with defendants' predecessor, this did not constitute a "colorable claim" under ERISA because it was "not a case in which plaintiffs seek benefits under [an ERISA-governed] Plan, or seek to clarify or enforce any rights under the Plan[;] [r]ather, plaintiffs assert that, notwithstanding what the Plan states, they are entitled to. . . coverage . . . pursuant to a separate court-ordered settlement"; because the dispute did not concern payment under the ERISA plan itself, but instead, under the separate, court-ordered settlement agreement, it was not an ERISA "colorable claim"); *cf. Zummo v. Zummo*, No. 11 CV 6256(DRH)(WDW), 2012 WL 3113813, at *4 (E.D.N.Y. July 31, 2012) (because plaintiff's breach-of-contract claim required an examination of an employee benefit plan's language and essentially sought enforcement of a right to payment under the terms of that plan, plaintiff's "claim [fell] squarely within the enforcement provision of ERISA").

Finally, although plaintiff attempts to label his negligent misrepresentation claim as a dispute about the calculation of benefits, the Court asked plaintiff's counsel at oral argument what the measure of damages would be if plaintiff were to prevail on his negligent misrepresentation claim. (Oral Arg. Nov. 26, 2012.) In response, plaintiff's counsel did not reference any amount under the plan; rather, counsel suggested that the damages were unclear and would be based upon common law. (*Id.*) However, the only plausible damages for a negligent misrepresentation claim, based upon an alleged misrepresentation on an EOB that plaintiff's lifetime medical maximum was $2 million (rather than $1 million), would be to reinstate the $2 million maximum. Thus, it is clear that plaintiff's claim is not a dispute as to the amount of benefits under the Plan; rather, Korman, in essence, seeks a reinstatement of benefits pursuant to the terms of the Plan under the guise of a negligent misrepresentation claim against a former claims administrator.

For these reasons, Korman's claim does not fit into the confines of a simple "amount of payment" dispute. The Court, therefore, concludes that Korman's claim meets both facets of the first prong of the *Davila* test.

9

b. *Davila* Prong Two

The question to be resolved under the second prong of *Davila* is whether any other independent legal duty is implicated by United's alleged misrepresentation to Korman in its August 2009 EOB. The Second Circuit has made clear that the "key words" in conducting this analysis are "other" and "independent." *See Montefiore*, 642 F.3d at 332 (internal quotation marks omitted).

Here, Korman asserts that his claim sounds separately and independently in state insurance law. (*See* Korman Opp'n Mot. at 5-6.) Specifically, Korman argues that United held a duty separate from § 502(1)(a)(B) because its conduct "was governed by New York Insurance Law § 3234, which requires 'every insurer' to 'provide the insured or subscriber with an explanation of benefits form in response to the filing of a claim under a policy or certificate providing coverage for hospital or medical expenses . . . .'" (*Id.* at 5.) This law, Korman contends, creates an independent legal duty between United and Korman, thereby extracting his claim from ERISA's domain.

The Court is not persuaded. First, *Montefiore* explained that where an ERISA entity's conduct is "inextricably intertwined with the interpretation of Plan coverage and benefits," there is no separate or independent duty. *Montefiore*, 642 F.3d at 332. Here, the Employee Plan's documentation identified United as the "claim fiduciary for Hospital/Medical Options B, C, D and the O&R Plan." (Am. Compl. Ex. A, at 153.) Thus, pursuant to the Plan, United – as the then claims administrator of Con Edison's Plans – was required to notify Plan members (here, Korman) of the denial of a claim, setting forth the reasons for doing so and the corresponding appeal procedures. (*Id.*) United's actions were thus "inextricably intertwined" with the terms of the Employee Plan itself. Korman's rights as to benefits, along with United's obligations, arose not from state insurance law, but rather, from the Plans' terms, which described those benefits and procedures available to Korman by virtue of his status as a Plan participant. *Cf. Stevenson v. Bank of N.Y., Inc.*, 609 F.3d 56, 60 (2d Cir. 2010) (finding bank's promise to maintain plaintiff's benefits under its pension plan, even after employee had left bank's employ and was no longer a plan participant, to constitute a separate and legal duty from that set forth in the employer's pension plan).

Second, the law that Korman cites to establish a separate and independent legal duty offers him no assistance. Section 3234 of New York insurance law applies to "insurers," which the law defines as one "obligated to confer benefit of pecuniary value upon another party, the 'insured' or 'beneficiary,' dependent upon the happening of a fortuitous event in which the insured or beneficiary has, or is expected to have at the time of such happening, a material interest which will be adversely affected by the happening of such event." N.Y. Ins. Law § 1101(a)(1) (McKinney 2012). United was not acting as an insurer when it delivered the EOB to Korman; rather, it was acting in its then-capacity as claims administrator for Con Edison's self-insured Plans.[9] United, itself, was not "obligated to confer benefit of pecuniary value" on Korman; thus, it was not Korman's "insurer" under the clear terms of the law.

---

[9] Indeed, Korman confirms in his amended complaint that United held the role of claims administrator to both of Con Edison's Plans until December 31, 2009. (*See* Am. Compl. ¶ 33.)

Third, considering Korman's separate-and-independent-legal-duty arguments on a broader scale, a finding that Korman's claims were not preempted by ERISA here would have problematic implications for future cases, and undermine the purposes of ERISA. As previously set forth, Congress enacted ERISA to "'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts." *Davila*, 542 U.S. at 208 (quoting 29 U.S.C. § 1001(b)). Congress's goal of establishing a "uniform regulatory regime over employee benefit plans" and "to ensure that employee benefit plan regulation is exclusively a federal concern," *id.* (citation and internal quotation marks omitted), would be considerably weakened if all a party need do to avoid such preemption were point to another, seemingly applicable law falling in the state law realm.

The Court's concern here is not a novel one. To avoid such confusion, the Second Circuit has clarified that a court's focus in this context should not be on the *source* of the law *per se* when considering preemption, but rather, on the targeted ERISA entity's *conduct*, and assessing whether the same better triggered ERISA or a different, independent legal duty. *See*, *e.g.*, *Arditi*, 676 F.3d at 300-01 (concluding that ERISA entity's issued employment agreement did not provide separate duty to support a breach of contract claim because the agreement "merely described the benefits [an employee] would receive as a Plan member; it made no promises of benefits separate and independent from the benefits under the Plan"); *Montefiore*, 642 F.3d at 332 (phone conversations between insurer and provider as to patient coverage did not create a separate duty because the plan required such a pre-approval process). As previously set forth, a review of United's conduct shows that United sent Korman the contested EOB stating those benefits allegedly available to Korman for his submitted April 2009 medical claim pursuant to its obligations as a claims administrator for Con Edison's ERISA-governed Plans. The fact that New York state law might be applicable is not, under the facts presented, sufficient to block ERISA's sweeping preemptive power in this case.

Indeed, if New York insurance law were not preempted by ERISA here, then federal and state laws would be creating the very conflict that Congress sought to prevent in enacting ERISA's broad preemption power.[10] *See* 29 U.S.C. § 1132(a)(1)(B); *see also Miner v. Empire Blue Cross/Blue Shield*, No. 97 Civ. 6490(LAP), 2001 WL 96524, at *5-6 (S.D.N.Y. Feb. 5, 2001) (stating plaintiff "may not circumvent ERISA's preemption provision by attempting to dress up a state law claim as an ERISA cause of action by alleging violations of state minimum standards for claims processing"). Where such statutory conflict presents itself, the question arises: which law should govern? Congress has answered, and quite clearly: ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144.

---

[10] For instance, ERISA regulation 29 C.F.R. § 2560.503-1(g) sets forth the manner and content for proper notification of a benefit determination by a plan administrator. *See* 29 C.F.R. § 2560.503-1(g) (stating "the plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination," which "shall set forth . . . the specific reason or reasons for the adverse determination" in accordance with its statutorily required provisions). New York state insurance law similarly sets forth notification requirements. *See supra*.

In short, if New York insurance law were permitted to eclipse ERISA's preemptive force in the manner suggested by plaintiff, it would severely undercut ERISA's "extraordinary pre-emptive power" that "converts an ordinary state common law complaint into one stating a federal claim." *Davila*, 542 U.S. at 209 (quoting *Metro. Life*, 481 U.S. 65-66). This is not what Congress intended in enacting ERISA, and it is not how courts have applied the preemption doctrine in similar scenarios. *See Berry v. MVP Health Plan, Inc.*, No. 1:06-CV-120 (NAM/RFT), 2006 WL 4401478, at *5 (N.D.N.Y. Sept. 30, 2006) (concluding that "allowing plaintiffs to proceed with their state-law suit would pose an obstacle to the purposes and objectives of Congress, because plaintiffs are attempting to utilize N.Y. Ins. Law to vindicate their rights under the relevant [employer] ERISA-governed plans"; further noting that "plaintiffs are seeking to use N.Y. Ins. Law . . . as separate vehicle[s] to assert a claim for benefits outside of . . . ERSIA's remedial scheme, . . . [and t]hus, these causes of action are preempted and removable to this Court" (internal citations and quotation marks omitted)); *Miner*, 2001 WL 96524, at *6 (stating "inferring a cause of action under ERISA based on a violation of state law would undermine ERISA's enforcement scheme").

Finally, the cases to which Korman cites to advance his position that preemption is not warranted are inapposite to the circumstances here. For example, Korman points to *De Buono v. NYSA-ILA Medical & Clinical Services Fund*, 520 U.S. 806, 809 (1997), in which the Supreme Court held that ERISA does not preempt a New York state gross receipts tax on hospitals' income, including those hospitals operated by ERISA funds. There are a few notable differences: first, *De Buono* does not concern the administration of benefits or coverage under an ERISA plan, as here; rather, it concerns state-law regulation of health and safety matters on entities. Second, the Supreme Court provided helpful language in clarifying why the facts of *De Buono* did not trigger ERISA preemption. Specifically, it noted earlier cases in which preemption was deemed clear because there was a "clear 'connection with or reference to'" an ERISA benefit plan; significantly, although such circumstances were not present in that case, they are present here. *Id.* at 813 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983)). However, the Supreme Court noted those cases in which ERISA preemption would be appropriate, including where "the existence of a pension plan is a critical element of a state-law cause of action." *Id.* at 815. Such is the case here, where Korman's state law negligent misrepresentation claim turns directly on United's obligations, as claims administrator of an ERISA-governed welfare benefit plan, to apprise plan members of their benefits and coverage.

Korman's references to *Hattem v. Schwarzenegger*, 449 F.3d 423 (2d Cir. 2006) and *New England Health Care Employees Union v. Mount Sinai Hosp.*, 65 F.3d 1024 (2d Cir. 1995) are similarly distinguishable. In such cases, the Second Circuit dismissed the notion of ERISA preemption simply because a state law might have an impact on the cost, administration, or economic effect of an ERISA plan. *See Hattem*, 449 F.3d at 431-32; *New Eng. Health Care Employees Union*, 65 F.3d at 1032. In those cases, the Second Circuit noted that the state law at issue concerned an area traditionally relegated to the states, and found as weighing against preemption the fact that an ERISA plan was not explicitly or implicitly triggered by the state law at issue. *See Hattem*, 449 F.3d at 431-32; *New Eng. Health Care Employees Union*, 65 F.3d at 1032. Such is not the reality here. This is not

a case in which ERISA funds are indirectly affected by a state law; rather, this case concerns the benefits and coverage available to an ERISA plan participant under his employer's Plans.

\* \* \*

For all of these reasons, the Court concludes that United's alleged misrepresentation via the EOB was inextricably intertwined with an interpretation of Con Edison's Plan coverage and benefits. Therefore, Korman's state law negligent misrepresentation against United is preempted.[11] This holding rests on firm precedential ground. *See, e.g.*, *Griggs v. E.I. DuPont De Nemuors & Co.*, 237 F.3d 371, 378 (4th Cir. 2001) (concluding that ERISA preempted claim for negligent misrepresentation and stating generally that "ERISA preempts state common law claims of fraudulent or negligent misrepresentation when the false representations concern the existence or extent of benefits under an employee benefit plan"); *Smith v. Dunham-Bush, Inc.*, 959 F.2d 6, 10 (2d Cir. 1992) (holding that ERISA preempted claim for negligent misrepresentation because the alleged misrepresentation directly and exclusively concerned plaintiff's benefits under an ERISA-governed plan); *see also Watson v. Consol. Edison of N.Y.*, 594 F. Supp. 2d 399, 408-09 (S.D.N.Y. 2009) (finding that state law claims based upon alleged misleading representations were preempted by ERISA).

Given that ERISA preempts the negligent misrepresentation claim, there remains the question as to whether any claim might arise against United under ERISA. The answer is simple: because United was not the plan administrator and is no longer the claims administrator, no cause of action may lie against United under ERISA. Indeed, at oral argument, counsel for plaintiff conceded that if plaintiff's claims were deemed preempted, his claims could not proceed against United under ERISA. (Oral Arg. Nov. 26, 2012.)

To the extent plaintiff suggests that such an interpretation immunizes United from liability, however, such an argument misses the point of ERISA preemption. Although plaintiff cannot sue the former claims administrator under ERISA in this situation, plaintiff is certainly not without a full ERISA remedy. Specifically, if plaintiff is able to prove his entitlement to the $2 million lifetime medical maximum benefit, he will be able to achieve full recovery under ERISA through his remaining ERISA claims in the amended complaint, with no need to sue former claims administrator, United. Similarly, if plaintiff's other claims against the remaining defendants fail – namely, if it is determined that plaintiff was not entitled to a $2 million lifetime medical maximum benefit based upon, *inter alia*, the alleged misconduct of the plan administrator – then the negligent misrepresentation claim arising from the EOB also would necessarily fail. Thus, contrary to plaintiff's assertion, ERISA preemption and the corresponding dismissal of the negligent misrepresentation claim against the former claims administrator does not lead to an anomalous,

---

[11] At oral argument, in contrast to the above-referenced cases supporting United's position, plaintiff's counsel was unable to provide any case authority in which a court had concluded that a negligent misrepresentation claim arising out of an EOB (or any analogous circumstances) was not preempted under ERISA. (Oral Arg. Nov. 26, 2012.) In addition, the Court's independent research revealed no such case. The Court also gave plaintiff's counsel an opportunity to provide any such authority in a supplemental letter to the Court after oral argument. In a letter dated December 10, 2012, counsel advised the Court that plaintiff had no additional legal authority to support its position. (Pl.'s Letter of Dec. 10, 2012.)

or potentially unjust, result under the circumstances of this case.

### IV. CONCLUSION

For the reasons set forth above, the Court grants United's motion to dismiss Korman's negligent misrepresentation claim. Because that claim is the only remaining claim against United, United is terminated as a defendant in this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:     January 16, 2013
           Central Islip, NY

\* \* \*

Plaintiffs are represented by Allison Greenberg, Law Offices of Alison Greenberg, 14 Penn Plaza, Suite 2116, New York, New York 10122. Defendant United Healthcare Service, LLC is represented by Francis X. Manning, Stradley Ronon Stevens & Young, LLP, Libertyview, 457 Haddonfield Road, Suite 100, Cherry Hill, NJ 08002, and John J. Reilly, Reilly & Reilly, 170 Old Country Road, Suite 308, Mineola, New York 11501.